55 CCPA

**Application of Joseph W. SCHNELLER.**
**Patent Appeal No. 7883.**

United States Court of Customs
and Patent Appeals.
June 27, 1968.

Rehearing Denied Oct. 10, 1968.

Robert F. Hause, Buffalo, N. Y. (James W. Dent, Washington, D. C., of counsel), for appellant.

Joseph Schimmel, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND and KIRKPATRICK.*

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 17–23 of application Serial No. 205,164, filed June 14, 1962, for "Lathing Clips" on the ground of double patenting. No claim has been allowed.

The claimed subject matter relates to clip systems for securing gypsum lath to support members in partition walls and ceiling constructions. The clip is an elongated curved piece of bent wire having head portion 62 as illustrated in Figs. 4 and 5 of appellant's application, reproduced below.

Fig. 4

Fig. 5

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

Fig. 4 shows head portion 62 alone from an axial, end view. Fig. 5 shows the entire clip. Head portion 62 comprises a lip portion 63, a loop portion 67 formed by a first side leg 64, a bottom leg 65 and a second side leg 66, and an offsetting leg 68, terminating in a sinuous prong 69. The legs 64–66 of the loop portion 67 are disposed in a "first plane," the body portion 60 and lip 63 being on opposite sides of that plane. A plurality of the clips are interlocked with each other over lath boards and attached to studs as illustrated in Fig. 1 below:

Fig. 1

Claims 17–22 are drawn to the wire clip as described above. Claim 23 is drawn to the combination of lath sheets attached to frame members by the wire clips. All claims recite the lip portion of the clip and all except 18 and 19 omit

reference to prong 69, which serves the dual function of holding the lath and the tail of another clip.

In rejecting claims 17–23, the board based its finding of double patenting on claims 2 and 3 of appellant's patent 2,945,329 issued July 19, 1960. The present application is a continuation of application serial No. 805,005 which is a division of the application for said patent. Figs. 1, 4 and 5 of the patent drawings are substantially the same as and show the same structure as Figs 1, 4, and 5 reproduced above. A modification of the above-described clip in which the lip (63) has a modified shape and the body (60) extends at a greater angle to the plane of the loop (67), shown in Figs. 2 and 3 of the present application, is likewise shown in Figs. 2 and 3 of the patent. The patent also discloses further clips which have no body portions for use as "starter" clips in the floor and ceiling positions, as shown in Fig. 1, supra, at 33 and 34. Essentially, these starter clips provide prongs (69) positioned on offsetting legs so that the prongs overlie the surface of the lath to hold it and also hold the tail ends (61) of associated clips crossing adjacent laths just as do the prongs 69 in Figs. 4 and 5.

■ To summarize the disclosures in the issued patent and the present application, everything disclosed in this application is disclosed in the patent and the patent discloses additional matter. By reason of the copendency, only the claims of the patent can be considered as support for the rejection, its disclosure being looked to only to determine the meaning of the claims, which are to be read in the light of the specification.

The rejection is predicated on claims 2 and 3 of the patent. Since these are both dependent claims, and for reasons which will be made clear later, we here reproduce all the claims of the patent (emphasis ours).

1. A clip of formed wire for attaching a sheet of lath to a structural framing element *comprising loop means* for attaching said clip to a framing element, said loop means lying substantially in a first plane, one end of said loop means forming an end leg, *an offsetting leg* extending substantially perpendicularly from the outer end of said end leg, and *a prong* formed for receiving and holding a straight tail portion of another clip, said prong extending angularly from the opposite end of said offsetting leg, said offsetting leg and said prong being in a common second plane which is substantially perpendicular to said end leg, said second plane being substantially perpendicular to said first plane, whereby when in operative position said end leg is adapted to be disposed adjacent an end surface of an associated lath sheet and to extend perpendicularly to the general plane of the sheet, and said offsetting leg is adapted to extend parallel to and adjacent the outer face of an associated lath sheet with the prong being adapted to extend parallel and adjacent to the outer face of an associated lath sheet.

2. A wire clip as defined in claim 1 wherein the wire extending from the opposite end of said loop defines an elongated body portion terminating at the opposite end in a substantially straight tail portion adapted for insertion between the prong of an adjacent clip and the outer face of a lath sheet.

3. A wire, straight lathing clip as defined in claim 2, wherein said elongate body portion extends substantially perpendicularly to the plane of said loop.

4. A wire, diagonal lathing clip as defined in claim 2, wherein said elongate body portion extends at substantially a 45° angle from the plane of said loop.

5. A wire *starter clip as defined in claim 1 consisting essentially solely of* said attachment means, said end leg, said offsetting leg and said prong.

Claim 17 on appeal is illustrative and reads (emphasis ours):

17. An interlocking, continuous support type wire clip for attaching lath sheets to structural framing member, said clip comprising an elongate *body portion* of at least about 12 inches length terminating at one end in a tail portion for attachment to another similar clip and terminating at the opposite end in a head portion, said head portion having a framing member receiving *loop* consisting essentially of a first side leg terminating in a generally perpendicularly extending bottom leg, said bottom leg terminating at its opposite end in a generally perpendicularly extending second side leg substantially parallel to said first side leg and disposed substantially in a first plane common to said first side leg and said bottom leg, said first plane intersecting the general extent of said body portion, the extent of said body portion at least at a portion thereof adjacent said head portion lying in a second plane substantially perpendicular to said first and second side legs and parallel to and spaced from said bottom leg, said head portion further comprising a relatively short *lath-edge receiving lip* disposed on an opposite side of said first plane from said body portion, at least a portion of said lip having an extent substantially within said second plane.

Analysis of the patent claims shows that claim 1 is a broad subcombination claim including three elements: loop means having an end leg, an offsetting leg perpendicular to it, and a prong extending angularly from the offsetting leg. It covers, in the sense that it reads on, the two embodiments of clips, common to this application and the patent, as well as the floor and ceiling starter clips additionally disclosed in the patent.

It will be noted that patent claim 5 implies that claim 1 enumerates the elements of a *starter* clip, which has no body, and then limits it by substituting the phrase "consisting essentially solely of" for the word "comprising" in claim

1. It is thus clear what the scope of patent claim 1 is.

Patent claim 2, relied on in the rejection, adds the elongated body (60) with its straight tail (61). Claim 3, also relied on, adds to claim 2 the further limitation that the body is perpendicular to the plane of the loop, which is the embodiment of Figs. 4 and 5, supra. These are the two claims relied on by the examiner and the board to support the double patenting rejection.

It will be seen that *no patent claim refers to a lip* portion (63) and all refer to a prong (69). *All application claims include a lip* and it is on these facts that appellant bases his argument that the rejection is unsound. The argument is that his clips contain two inventions: (1) the offset prong and (2) the lip and that the patent claims are directed to the offset prong invention and the application claims to the lip invention, which is, he says, an "independent and distinct" invention which, under the rules, he could not have claimed in the patent and so he filed what is, in effect, a voluntary divisional application. The record before us does not contain either application serial No. 530,179 of Aug. 23, 1955, on which the patent issued, or the intermediate divisional application, serial No. 805,005 of April 8, 1959, of which the present application is said to be a continuation, filed more than three years later and nearly seven years after the first application on which the patent was granted. There is, therefore, no direct indication before us of why appellant chose this voluntary division method of claiming a clip embodying his lip invention in separate applications instead of claiming it in the application in which he first disclosed it, except for his present contention that under the rules he *thinks* he should not have done so. He certainly could have tried it. At worst he would have had a requirement for restriction. He had already made the lip invention and had fully disclosed it in his first application. *This is not a case of an improvement or modification invented after filing. Hence it is not the*

*usual "obviousness-type" double patenting case.* Neither is it a "same-invention-type" double patenting case, for reasons presently to be explained.

It will be useful for discussion to have before us appellant's own analysis, as presented to the examiner after final rejection. He said his clip includes three *old* elements: elongate body A, loop portion B, and prong C. (These are shown in combination in a prior art patent to Makowski, No. 1,955,247, cited but no longer relied on.) He has added two new elements: offsetting leg X, to offset the prong, and lip Y, to secure the edge of the next course of lath. He says the "best mode" of practicing his invention is the combination ABCXY but that the combinations ABCX and ABCY are two *different* inventions. We agree that they are. He says that in the patent he has claimed ABCX in claims 2, 3, and 4 and that here he is claiming ABCY and, therefore, there is no *double* patenting.

■ It is at this point that we have to disagree with appellant. True, there is no double patenting in the sense of claiming the same invention because ABCX and ABCY are, in the technical patent law sense, different inventions. The rule against "double patenting," however, is not so circumscribed. The fundamental reason for the rule is *to prevent unjustified timewise extension of the right to exclude* granted by a patent no matter how the extension is brought about.

To conform to this reason and to prevail here, appellant has the burden of establishing that the invention claimed in his patent is "independent and distinct" from the invention of the appealed claims. The public policy considerations underlying 35 U.S.C. § 121 permit separate patents on "independent and distinct" inventions which are initially "claimed in one application." The statute places initial responsibility for this determination on the Commissioner of Patents. Where, as here, no such determination has been made, it is necessary to scrutinize carefully an applicant's vol-

untary alleged determination of this issue for it can lead to the improper proliferation of patents on the same invention with the inherent result of extending timewise a patentee's right to exclude others from the invention disclosed in the original application and on which his patent has issued.

This possibility is clear in a case such as the present as shown by a consideration of the pertinent dates. The original application was filed August 23, 1955 (nearly 13 years ago). The patent issued on that application July 19, 1960 (nearly 8 years ago). Thus, if appellant were now to prevail, the end result would be the grant of another patent effectively extending the time during which he may exclude others from practicing an invention which is disclosed and claimed in his issued patent.

Under these circumstances, even a minimal concern for the public interest requires an applicant to establish that the inventions are in fact independent and distinct and hence that the grant of a patent on the later application will not result in a timewise extension of the protection afforded by his earlier patent. Failing in this, an applicant's remedy lies in filing a terminal disclaimer which will effectively prevent this result.

Here, appellant has clearly not established the independent and distinct character of the inventions of the appealed claims.

The point at which appellant's argument falls down is in the contention that since patent claims 2 and 3 "cover" ABCX, ABCY "is in no respect patented by any of the claims of the patent." The flaw in the argument is in the apparent assumption that the patent claims cover *only* ABCX. The fact is that since, with the exception of claim 5, they are "comprising-type" claims, they "cover" both versions *of the clip disclosed both in the patent and in the present application* because they read squarely thereon. They "cover" the preferred form ABCXY, common to the patent and this application, in the same sense. The fact that X and Y are distinct elements, per-

forming independent functions, so that either can be employed without the other, does not change this fact. Neither does appellant's omission of reference to the lip Y from his patent claims.

The claims on appeal, which are directed to the combinations ABCY or ABCXY, would therefore continue patent protection on the preferred embodiment of the invention, ABCXY, disclosed in the patent, beyond the expiration of the patent. There is no terminal disclaimer in this case to prevent such a timewise extension of protection.

We do not have here, as we have had in some "double patenting" cases, the invention of ABCX by one person and ABCY by another so this excuse for filing two applications is not present. Neither do we have any requirement of restriction, as provided in 35 U.S.C. § 121, to excuse it. We do not have any terminal disclaimer, either filed or offered to be filed. Appellant was not forced into his present situation. It was entirely of his own making.

The controlling fact is that patent protection for the clips, fully disclosed in and covered by the claims of the patent, would be extended by allowance of the appealed claims. Under the circumstances of the instant case, wherein we find no valid excuse or mitigating circumstance making it either reasonable or equitable to make an exception, and wherein there is no terminal disclaimer, the rule against "double patenting" must be applied.

Appellant has relied on certain statements taken out of context from In re Heinle, 342 F.2d 1001, 52 CCPA 1164, and In re Sutherland, 347 F.2d 1009, 52 CCPA 1683. Once more we "caution again against the tendency 'to freeze into [* * *] rules of general application what, at best, are statements applicable to particular fact situations'." In re Riden, 318 F.2d 761, 763, 50 CCPA 1411, 1415.

In re Heinle is clearly distinguishable. The issued patent claimed a mechanical combination for holding a toilet paper roll. The application claimed a separately usable and salable *element* of that combination, a particular core for the roll. A combination claim does not "cover" or read on a single element. The protection of the combination afforded by the single Heinle patent claim would not have been extended by the application claims directed to the element. We refer to our opinions therein and in In re Allen, 343 F.2d 482, 52 CCPA 1315, decided the same day, for further elucidation of our thinking on the subject and for the several earlier precedents permitting patenting of a patentable element after the patenting of a combination containing it, in the absence of a terminal disclaimer.

In re Sutherland is also distinguishable. It was a case of an entirely different kind, involving the inventions of two different people which could be and were employed in the same process of agglomerating synthetic rubber latex. Two separate applications were necessary. The patent of the other inventor, Carpenter, issued first. The situation was complicated by the fact that Carpenter's specification disclosed Sutherland's invention. We expressly found, however, "no domination by one inventor's claims of the other's invention." We also note that the Sutherland and Carpenter applications were filed on the same day. Here, there is only one inventor, the patent claims do dominate what the application claims, and the application was filed some six years and 9 months after the first application disclosing everything now claimed.

To sum up the situation in appellant's own terms: The combination ABC was old. He made two improvements on it, (1) adding X and (2) adding Y, the result still being a unitary clip of enhanced utility. While his invention *can* be practiced in the forms ABCX or ABCY, the greatest advantage and best mode of practicing the invention as disclosed is obtained by using both inventions in the combination ABCXY. His first applica-

tion disclosed ABCXY and other matters. He obtained a patent claiming BCX and ABCX, but *so* claiming these combinations as to cover them *no matter what other feature is incorporated in them,* thus *covering effectively ABCXY.* He now, many years later, seeks more claims directed to ABCY *and ABCXY.* Thus, protection he already had would be extended, albeit in somewhat different form, for several years beyond the expiration of his patent, were we to reverse. Anyone undertaking to utilize what he disclosed in the patent, either as his "diagonal lathing clip" (Figs. 2 and 3) or his "straight lathing clip" (Figs. 3 and 4), *in the preferred and only form in which he described these clips,* would thus run afoul of a still unexpired patent if the appealed claims were allowed. Appellant has argued that this could be avoided by omitting the lip Y which is an essential element of his appealed claims. We do not consider this an effective answer; he would have enjoyed his full term of protection on clips, disclosed in his patent as containing lip Y, whether or not they contained lip Y. He has shown no justification for such *extended* protection. He has made no effort not to extend it.

The decision of the board is affirmed.

Affirmed.

WORLEY, C. J., and KIRKPATRICK, J., concur in the result.

ALMOND, Judge (concurring).

As the above opinion points out, the patent claim, by virtue of the disclosure and the "comprising" language, covers a combination ABCXY. The application before us claims subcombination ABCY. The above opinion finds an extension of monopoly.

In In re Heinle, 342 F.2d 1001, 52 CCPA 1164, a patent had issued containing a claim to combination ABCDE. An application was filed claiming element E, and the majority found no extension of monopoly.

I find the facts here indistinguishable from those in *Heinle,* and concur in the result because it is consistent with my dissent in In re Allen, 343 F.2d 482, 52 CCPA 1315, and my concurrence in In re Heinle.